51 Cal.Rptr.3d 687 (2006)
145 Cal.App.4th 487
The PEOPLE, Plaintiff and Respondent,
v.
Eric BALKIN, Defendant and Appellant.
No. B186152.
Court of Appeal of California, Second District, Division Five.
December 1, 2006.
*688 Law Offices of Chris R. Redburn and Chris R. Redburn, San Francisco, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels, and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.
TURNER, P.J.

I. INTRODUCTION
Defendant, Eric Ross Balkin, appeals from his conviction for failing to register as a sex offender. (Pen.Code,[1] § 290, subd.(a)(1)(A).) The dispositive issue is whether there is substantial evidence defendant failed to register within five days of entering the city or county of Los Angeles, an essential element of a violation of section 290, subdivision (a)(1)(A). We conclude there is no such evidence. Accordingly, we reverse the judgment with directions to dismiss the information.

II. FACTUAL BACKGROUND
We view the evidence in a light most favorable to the judgment. (Jackson v. Virginia (1979) 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; People v. Osband (1996) 13 Cal.4th 622, 690, 55 Cal.Rptr.2d 26, 919 P.2d 640; Taylor v. Stainer (9th Cir.1994) 31 F.3d 907, 908-909.) Defendant stipulated that he had been convicted of registerable sex offenses, three counts of forceful oral copulation, section 288a, subdivision (c) in 1987. As a result of those convictions, defendant was required to register as a sex offender. Sharon Wolfe worked as a correctional counselor at the California Institution for Men during the years 2000 and 2001. In that capacity, she met with inmates prior to their release on parole and often reviewed section 290 registration requirements with them. Ms. Wolfe did not recall defendant by name. However, a review of documentation dated August 14, 2001, involving defendant suggested that she would have *689 identified him by name, photo, and prison number. The section 290 registration notification form would have been discussed with and explained to defendant to insure his understanding prior to obtaining his signature and thumbprint. Ms. Wolfe would have read each section to defendant and provided him an opportunity to review the document and ask questions. Thereafter, Ms. Wolfe would sign and date the form as a witness to the inmate's signature. Ms. Wolfe recognized her signature on the registration notification form dated August 14, 2001. The form included the provisions: "My responsibility to register as a sex offender is a lifetime requirement. [¶] ... [¶] I must register within five working days of coming into or of changing residence or location within any city, county, or city and county in which I am located or residing with the law enforcement agency having jurisdiction over my location or place of residence. [¶] ... [¶] Upon release from incarceration, placement or commitment, I must register or reregister if I have previously registered with a law enforcement agency having jurisdiction over my location or place of residence within five working days of release. [¶] ... [¶] If I am a parolee, I must provide proof of registration to my parole agent within six working days of release or parole."
Correctional Officer Ruben Contreras had been employed by the Department of Corrections at Chino for 17 years. There was no evidence Officer Contreras had an independent recollection of defendant's 2003 release from prison. But, Officer Contreras testified that pursuant to his normal procedures he would have: informed defendant of the section 290 registration requirements by reading each paragraph of the advisement form; inquired whether defendant understood what was read; and had defendant initial next to that paragraph. The form, dated December 4, 2003, reflected that defendant initialed the separate paragraphs. The form also included the signatures of Officer Contreras and defendant.
The Office of the Attorney General Sex Offender Tracking Program provided documentation that defendant was informed of his section 290 registration requirements on December 28, 1989, March 25, 1991, May 29, 1992, April 2, 1993, February 24, 1994, April 14, 2000, February 6 and August 14, 2001, and December 4, 2003. The Sex Offender Tracking Program records showed that defendant was last paroled on April 3, 2005. There is no evidence to establish the prison from which defendant was paroled. The Sex Offender Tracking Program had no record of defendant registering pursuant to section 290 at any time. Shaudi Pishvaie, a fingerprint expert with the Los Angeles Police Department, compared defendant's fingerprints with those imprinted on the various registration notifications in exhibit No. 2. Ms. Pishvaie determined that the fingerprints on the registration forms dated May 29, 1992, April 1, 1993, and February 24, 1994, positively matched those taken of defendant at the time of trial. The fingerprints on the remaining forms were not clear enough to make positive identifications.
Defendant was arrested on April 21, 2005, in downtown Los Angeles by Los Angeles Police Officer Jose Lopez. Defendant identified himself as Samuel Hawks. Defendant was subsequently photographed and fingerprinted. When interviewed, defendant gave the address of 628 San Julian Street as the location where he received mail.

III. DISCUSSION
Defendant argues that there was insufficient evidence to support his conviction for willfully failing to register as a sex *690 offender within five working days of entering Los Angeles. Defendant was charged with violating section 290, subdivision (a)(1)(A). When defendant was last notified of his obligation to register as a sex offender on December 4, 2003, section 290 provided in pertinent part: "(a)(1)(A) Every person described in paragraph (2), for the rest of his or her life while residing in, or, if he or she has no residence, while located within California, or while attending school or working in California ... shall be required to register with the chief of police of the city in which he or she is residing, or if he or she has no residence, is located, or the sheriff of the county if he or she is residing, or if he or she has no residence, is located, in an unincorporated area or city that has no police department ... within five working days of coming into, or changing his or her residence within, any city, county, or city and county, or campus in which he or she temporarily resides, or, if he or she has no residence, is located." (Italics added.) In 2004, following the holding of People v. North (2003) 112 Cal.App.4th 621, 634, 5 Cal.Rptr.3d 337, the Legislature amended section 290, subdivision (a)(1)(A) eliminating references to the registrant's "location." (Stats.2004, ch. 429, § 1, No. 7 Deering's Adv. Legis. Service, p. 735.) Section 290, subdivision (a)(1)(A) provided after the 2004 amendment and now states: "Every person described in paragraph (2), for the rest of his or her life while residing in California, or while attending school or working in California, as described in subparagraph (G), shall be required to register with the chief of police of the city in which he or she is residing, or the sheriff of the county if he or she is residing in an unincorporated area or city that has no police department, and, additionally, with the chief of police of a campus of the University of California, the California State University, or community college if he or she is residing upon the campus or in any of its facilities, within five working days of coming into, or changing his or her residence within, any city, county, or city and county, or campus in which he or she temporarily resides." (Stats.2004, ch. 429, § 1, No. 7 Deering's Adv. Legis. Service, p. 735.) The parties agree defendant's release on April 3, 2005, would have been governed by the revised statute. The California Supreme Court has repeatedly held: "`"The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]" [Citations.]'. ..." (People v. Sorden (2005) 36 Cal.4th 65, 72-73, 29 Cal.Rptr.3d 777, 113 P.3d 565, quoting People v. Barker (2004) 34 Cal.4th 345, 357, 18 Cal.Rptr.3d 260, 96 P.3d 507; Wright v. Superior Court (1997) 15 Cal.4th 521, 527, 63 Cal.Rptr.2d 322, 936 P.2d 101; see also People v. Chan (2005) 128 Cal.App.4th 408, 416, 26 Cal. Rptr.3d 878.)
In reviewing a challenge of the sufficiency of the evidence, we apply the following standard of review: "[We] consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (People v. Mincey (1992) 2 Cal.4th 408, 432, 6 Cal.Rptr.2d 822, 827 P.2d 388, fn. omitted; People v. Hayes (1990) 52 Cal.3d 577, 631, 276 Cal.Rptr. 874, 802 P.2d 376; People v. Johnson (1980) 26 Cal.3d 557, 576, 162 Cal.Rptr. 431, 606 P.2d 738.) Our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Jackson *691 v. Virginia, supra, 446 U.S. at p. 319, 99 S.Ct. 2781; People v. Bolin (1998) 18 Cal.4th 297, 331, 75 Cal.Rptr.2d 412, 956 P.2d 374; People v. Marshall (1997) 15 Cal.4th 1, 34, 61 Cal.Rptr.2d 84, 931 P.2d 262; People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103; People v. Barnes (1986) 42 Cal.3d 284, 303, 228 Cal.Rptr. 228, 721 P.2d 110; Taylor v. Stainer, supra, 31 F.3d at pp. 908-909.) The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence. (People v. Rodriguez (1999) 20 Cal.4th 1, 11, 82 Cal. Rptr.2d 413, 971 P.2d 618; People v. Stanley (1995) 10 Cal.4th 764, 792, 42 Cal. Rptr.2d 543, 897 P.2d 481; People v. Bloom (1989) 48 Cal.3d 1194, 1208, 259 Cal.Rptr. 669, 774 P.2d 698; People v. Bean (1988) 46 Cal.3d 919, 932, 251 Cal. Rptr. 467, 760 P.2d 996.) The California Supreme Court has held, "Reversal on this ground is unwarranted unless it appears `that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (People v. Bolin, supra, 18 Cal.4th at p. 331, 75 Cal.Rptr.2d 412, 956 P.2d 374, quoting People v. Redmond (1969) 71 Cal.2d 745, 755, 79 Cal.Rptr. 529, 457 P.2d 321.)
Defendant argues, "There was no proof of any kind that [he] entered Los Angeles, or changed his residence within Los Angeles, more than five working days before he was arrested, or even that he was in Los Angeles for any five-day period between April 3 and 21." We agree. Defendant was charged with a violation of section 290, subdivision (a)(1)(A), which only requires that he register within five working days of his arrival in the city or county with either the chief of police or sheriff for unincorporated areas respectively. Defendant was not charged with violating section 290, subdivision (a)(1)(C)(i) which states: "A transient must register, or reregister if the person has previously registered, within five working days from release from incarceration, placement or commitment, or release on probation, pursuant to paragraph (1) of subdivision (a), except that if the person previously registered as a transient less than 30 days from the date of his or her release from incarceration, he or she does not need to reregister as a transient until his or her next required 30-day update of registration. If a transient is not physically present in any one jurisdiction for five consecutive working days, he or she must register in the jurisdiction in which he or she is physically present on the fifth working day following release, pursuant to paragraph (1) of subdivision (a)." Moreover, there was no evidence defendant was a "transient" within the meaning of section 290, subdivision (a)(1)(C). The sole evidence was that he had a mailing address. But there was no evidence to establish when defendant secured that address or moved into the city or countyit could have been one day prior to his arrest or more than five days.
Under section 290, subdivision (a)(1)(A), a failure to register within five working days of coming into a city or county is one offense. Defendant's failure to register within five working days of his release from a place of incarceration while a transient is a separate offense under section 290, subdivision (a)(1)(C)(i). Failing to register in the city or county in which the offender is residing within five days of entering the municipality is a separate offense which is not included in a violation of section 290, subdivision (a)(1)(C)(i). (See People v. Meeks (2004) 123 Cal.App.4th 695, 703, 20 Cal.Rptr.3d 445 [failure to register when one moves to a different residence is a separate and discreet offense from failing to register on a defendant's birthday]; People v. Davis (2002) 102 Cal.App.4th 377, 384-385, 125 Cal.Rptr.2d 519 [court lacks jurisdiction to convict a defendant of an offense that is neither charged nor necessarily included in the alleged crime].) There was insufficient *692 evidence that defendant had been present within the city or county of Los Angeles for five working days prior to his arrest on April 21, 2005. Therefore, the prosecutor failed to prove defendant violated subdivision (a)(1)(A).
In conclusion, defendant was held to answer by the magistrate on a charge of violating section 290, subdivision (a)(1)(A). Defendant was charged in the information with violating section 290, subdivision (a)(1)(A). The jury was instructed pursuant to section 290, subdivision (a)(1)(A). No reference was made in the jury instructions to an alleged transient status. The jury explicitly found he violated section 290, subdivision (a)(1)(A). Defendant was sentenced pursuant to section 290, subdivision (a)(1)(A). There is no reference in the information, jury instructions, or the verdict to an alleged transient status which might serve as a basis for liability pursuant to section 290, subdivision (a)(1)(C)(i). Thus, section 290, subdivision (a)(1)(C)(i) is not controlling. Had the prosecutor made a motion to amend or otherwise sought a jury determination on a subdivision (a)(1)(C)(i) theory, the result could have been different. Upon issuance of the remittitur, the information is to be dismissed. (People v. Stitely (2005) 35 Cal.4th 514, 563, 26 Cal.Rptr.3d 1,108 P.3d 182; People v. Hatch (2000) 22 Cal.4th 260, 271, 92 Cal.Rptr.2d 80, 991 P.2d 165.) Given the foregoing, we need not address the parties' remaining contentions.

IV. DISPOSITION
The judgment is reversed. Upon issuance of the remittitur, the information is to be dismissed.
We concur: ARMSTRONG and MOSK, JJ.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.