Filed 7/17/14  P. v. Standridge CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072137 |
| v. | (Super. Ct. No. 12CR19219) |
| WILLIAM DAVID STANDRIDGE, | |
| Defendant and Appellant. | |

A jury convicted defendant William David Standridge of failing to register as a sex offender with local law enforcement upon coming into a jurisdiction in California. (Pen. Code, § 290, subd. (b).)[1]  The trial court sentenced defendant to serve two years in state prison.

On appeal, defendant contends (1) the evidence was insufficient to prove he was aware of his obligation to register as a sex offender in California even though he regularly traveled to Arkansas to renew his registration as a sex offender in that state, (2) he received ineffective assistance of counsel because his trial attorney failed to

---

[1]     Undesignated statutory references are to the Penal Code.

1

request redaction of his prior record of conviction, (3) the trial court erred in refusing to instruct the jury on the definition of "reside" as used by section 290, (4) the trial court erred in failing to instruct sua sponte on the defense of mistake of fact, or, if there was no sua sponte duty to instruct on this defense, defense counsel was constitutionally ineffective for not requesting this defense instruction, and (5) he should have been granted probation rather than being sentenced to prison.

We conclude (1) the evidence was sufficient to establish defendant willfully failed to register as a sex offender; (2) defendant's record of conviction caused him no prejudice by its introduction; (3) the trial court was not required to provide the jury with a definition of the term "reside"; (4) the trial court was not required to instruct on the inapplicable defense of mistake of fact; and (5) the trial court did not abuse its discretion in rejecting defendant's request for probation. We affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

***Prosecution Evidence***

In 2009, defendant pled guilty to second degree felony sexual assault in Arkansas and began registering as a sex offender. As required by Arkansas law, defendant registered in person every six months from 2009 through 2011 with the Logan County Sheriff's office. On December 16, 2011, defendant signed a sex offender acknowledgement form that stated in pertinent part:

"2. Pursuant to §12-12-909 (b), The Arkansas Crime Information Center (ACIC) requires the offender to report any changes in residence or employment **IN Person** to the local law enforcement agency having jurisdiction. When changing residence/mailing address from within the state, this must be in writing, **signed by the offender** no later than ten (10) days before the offender establishes residence. . . .

"3. If the offender moves to another state or lives in Arkansas and works in another state, the offender must register in that state no later than three (3) business days after the offender establishes residency or employment in the new state. If the offender

2

attends school, does volunteer work or is employed at any institute of higher education, the offender shall register with the law enforcement agency having jurisdiction over the campus. . . .  [¶] . . . [¶]

"9.  Pursuant to Title 18, United States Code, Section 2250, if a sex offender fails to register or fails to report a change in residence, employment or student status, and travels in or moves across state lines, the offender can be charged with a federal crime and punished by up to ten (10) years imprisonment.  Pursuant to § 5-14-130 (1), it is a Class D Felony to provide false information to obtain identification cards or driver's licenses with incorrect permanent physical addresses."

Although defendant registered in Arkansas every six months, he never told Arkansas authorities about leaving that state.

Defendant got married in Sutter Creek, California on October 10, 2010 –- two days after arriving in California.  Defendant and his wife, Lisa Standridge, then lived at her parents' residence on Oro Madre Way in Sutter Creek.  Also living at the residence were Lisa's sister and the sister's two young, twin children.  Lisa asked defendant not to register as a sex offender because she did not want her family to know he had been convicted of a sex offense.[2]  Lisa made the request even though she knew defendant was required to register as a sex offender.

On February 16, 2012, the Sutter Creek Police Department received an anonymous tip that defendant was living on Oro Madre Way.  That same day, Sutter Creek Police Sergeant Kenneth Powers went to the residence and asked defendant whether he had registered in Sutter Creek.  Defendant said that "he had looked up information regarding registration and he did not believe that he had to because he was not actually residing there."  Defendant also told Sergeant Powers he had been in Sutter

---

[2]    Due to shared surname with defendant, we refer to Lisa by her first name.

3

Creek since December 20, 2011. After Sergeant Powers verified defendant had never registered as a sex offender in Sutter Creek, defendant was arrested.

During the period between October 2010 and February 2012, defendant made three trips to Arkansas to renew his registration as a sex offender. In none of the forms filled out during the renewals of his registration did defendant indicate he was living anywhere other than in Arkansas. Defendant's trips to Arkansas usually lasted about four to six weeks.

### Defense Evidence

Defendant testified on his own behalf and explained he considered Arkansas his home and continued to register there as required. Defendant continued to receive mail at his house in Arkansas. He also kept his vehicle registered in Arkansas. Defendant stated he was on unsupervised probation for which there was no requirement that he give notice prior to traveling. Defendant considered his stay in Sutter Creek to be "temporary" until his wife was well enough to travel back to Arkansas. Defendant explained about not telling his wife's family about his conviction because "Lisa asked me not to because [she was] afraid that [her family] would judge me before they got to know me." Defendant never notified Arkansas authorities he had been to California or even left the State of Arkansas. Defendant believed he did not have to register as a sex offender in Sutter Creek because he "wasn't a resident, going to school or working in this state."

DISCUSSION

I

### Sufficiency of the Evidence Regarding Failure to Register as a Sex Offender

Defendant contends the evidence was insufficient to prove his actual knowledge of the duty to register as a sex offender upon coming to California. In particular, he relies on his intent to return to Arkansas after a stay of indeterminate length to allow his wife to recover from her illness. We are not persuaded.

4

Subdivision (b) of section 290 provides that a person convicted of enumerated sex offenses "for the rest of his or her life while residing in California, or while attending school or working in California . . . shall be required to register with the chief of police of the city in which he or she is residing . . . within five working days of coming into, or changing his or her residence within, any city, county, or city and county, or campus *in which he or she temporarily resides*, and shall be required to register thereafter in accordance with the Act." (Italics added.)

Defendant in this case does not dispute he was previously convicted of a sex offense for which California imposes the registration requirement. Instead, he argues the evidence was insufficient to prove he knew he established a "residence" in California that triggered his duty to register here. A conviction for failure to register as a sex offender requires proof defendant had actual knowledge of the duty to register. (*People v. Garcia* (2001) 25 Cal.4th 744, 747 (*Garcia*).) Mere notice alone is insufficient to establish the necessary "willfulness requirement" of section 290. (*Ibid.*) However, proof of notice does suffice as a basis for the jury to infer the necessary actual knowledge, absent any evidence to the contrary. (*Id*. at pp. 752, 755 [holding failure to instruct on element of actual knowledge was harmless when the jury necessarily rejected defendant's claim he did not read the notice provided to him].)

As the California Supreme Court has reiterated, " 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) In so doing, a reviewing court 'presumes in support

5

of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)" (*People v. Maciel* (2013) 57 Cal.4th 482, 514.)

The evidence introduced at trial in this case proved defendant received multiple advisements from Arkansas authorities that upon entering another state he must immediately advise the appropriate authorities in the new state. Had defendant acted on his knowledge about the duty to register –- either by contacting the Sutter Creek authorities upon his entering California or by being forthcoming to Arkansas authorities about his travel –- he would have learned even a short visit triggered the requirement to register. Section 290 required registration even if defendant had not remained in any particular location for his stay in California. (*People v. Williams* (2009) 171 Cal.App.4th 1667, 1672-1673 [to reside in jurisdiction for purposes of statute does not require establishing a particular place of residence in the jurisdiction].)

Despite the evidence of his knowledge of his duty to register, defendant denies he "actually knew what qualified as a 'residence' under section 290, or that he actually knew he was required to register a second address in California due to his stay with his wife's relatives during her temporary medical treatment." In essence, defendant's sufficiency of the *evidence* argument relies on a purported misconception about section 290's *legal* definition of residence. In any event, the record suffices to show he simply chose not to register.

No evidence suggested defendant was factually mistaken about staying in California or he believed the residence in Sutter Creek was in Arkansas. Instead the record shows defendant actually knew he had a duty to register as a sex offender. When contacted by Sergeant Powers, defendant immediately responded he had "looked up information" for the purpose of determining whether he needed to register in California. Rather than misunderstanding whether the house on Oro Madres was a residence,

6

defendant's testimony showed he deliberately failed to register in order to accede to his wife's wish.

The facts of this case are similar to those presented in *In re Watford* (2010) 186 Cal.App.4th 684, 691. *Watford* involved a sex offender who had been convicted in Massachusetts and advised by that state's registration form that "he was 'required to immediately contact and advise of [his] presence, the appropriate authorities in any other state in which [he may locate himself] for the purpose of residence.' " (*Id.* at p. 692.) This advisement constituted sufficient notice to affirm a conviction for defendant's failure to register in California after living in this state for two months. (*Id.* at p. 686.) This court noted, " 'The statute is thus regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts. Compliance is essential to that objective; lack of compliance fatal.' " (*Id.* at p. 691, quoting *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.)

As in *Watford*, defendant in this case received clear advisement he was required to register when *coming into a new state*. Defendant was even advised he could be charged with a federal crime by failing to register when traveling across state lines. Thus, even if defendant were excused from understanding the house in which he was living on Oro Madre constituted a residence, the evidence showed he knew he was required to register upon arrival in California. Defendant had the requisite knowledge but chose not to fulfill his obligation.

We reject as inapposite defendant's cited cases of *Garcia, supra,* 25 Cal.4th 744, *People v. LeCorno* (2003) 109 Cal.App.4th 1058 (*LeCorno*), and *People v. Edgar* (2002) 104 Cal.App.4th 210 (*Edgar*). All three cases involved the failure to instruct the jury that a conviction for failure to register as a sex offender required proof of defendant's actual knowledge of the duty to register. (*Garcia, supra,* at pp. 751-752; *LeCorno*, *supra*, at pp. 1067-1068; *Edgar, supra,* at pp. 218-219.) Here, defendant's jury was properly instructed the People had the burden of proving that "defendant actually knew he had a

7

duty under . . . section 290 to register as a sex offender living at 250 Oro Madre and that he had to register within five working days of arriving in October 2010." Thus, this case was free of the instructional error that plagued *Garcia, LeCorno, and Edgar.*

In sum, defendant's statement to Sergeant Powers established his actual knowledge of the duty to register as a sex offender. Moreover, defendant's repeated returns to California provided additional triggers to comply with the advisements he acknowledged receiving from Arkansas authorities to register upon coming into a new state. Accordingly, the evidence sufficed to show defendant made a conscious choice not to register in California.

## II

### *Failure to Request Redaction of Exhibits*

Defendant contends he received constitutionally deficient legal representation because his trial attorney did not request redaction of the documents used to prove he had been previously convicted of a qualifying sex offense. We disagree.

### A.

### *Exhibits Showing Defendant's Prior Conviction*

To prove defendant had previously been convicted of an offense for which he was required to register in California under section 290, the People introduced two exhibits. Marked as court's exhibit 2, the Arkansas conditions of suspension or probation noted defendant had initially been charged with "Rape (2 counts); Sexual Assault, First Degree." However, the form showed he was actually on probation for 180 months "on the charges of sexual assault, 2nd degree, a Class 'B' felony."

The court's exhibit 3 was a State of Arkansas sex offender registration form that showed the crime "for which this registration is required" was "inappropriate contact with daughter." This form listed the victim as defendant's 13-year-old daughter.

Defendant's trial attorney did not object to the admission of either exhibit. The exhibits were shown to the jury to establish "that in fact the defendant was convicted of

8

that particular Arkansas code section requiring him to register." During closing arguments, the prosecutor did not mention any charges against defendant for rape. Instead, she only referred to his conviction of "Arkansas Code Section 5-14-125 second degree sexual assault." As to defendant's prior conviction, the prosecutor stated: "The first [element of section 290] is that the defendant was previously convicted in Arkansas. I don't know that there is much contention between the parties as to that, but I would refer you to Court's No. 2, a certified document, and you can see the certification on the back from Arkansas showing the defendant's name, the date of the conviction and what it is he is convicted of. . . . Now, I think [it is] really all the rest of the elements that we're here to talk about."

During closing arguments, defendant's trial attorney stated: "I don't think the facts of this case are in contention. What's in contention is the interpretation of those facts." Defense counsel made no mention of exhibits 2 or 3 and did not mention defendant's prior charges or conviction in Arkansas. The prosecutor did not mention defendant's prior conviction or any prior charges during her surrebuttal.

## B.

### *Claimed Ineffective Assistance of Counsel*

Defendant forfeited his claim of error as to the admission of unredacted versions of exhibits 2 and 3 for failure to object at trial on the grounds urged now on appeal. (*People v. Boyette* (2002) 29 Cal.4th 381, 423-424.) Thus, defendant resorts to claiming ineffective assistance of legal counsel due to his trial attorney's failure to request redaction of exhibits he characterizes as highly inflammatory. We reject the claim.

"To demonstrate ineffective assistance of counsel, a defendant must show that counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish prejudice, a defendant must show a reasonable probability that, but for counsel's failings, the result of the proceeding would have been more favorable to the defendant.

9

(*Id.* at p. 694.)' " *People v. Burgener* (2003) 29 Cal.4th 833, 880.) Moreover, " ' "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." [Citation.]' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

We conclude defendant suffered no prejudice by his attorney failing to request further redaction of exhibits 2 and 3. The fact of defendant's prior conviction for inappropriate contact with his daughter was uncontested. Defendant's trial attorney did not mention either defendant's prior conviction or refer to exhibits 2 or 3. The prosecution's only mention of exhibit 2 was to highlight the certification by the State of Arkansas on the *back* of the document. Neither the attorneys nor the court referred to the rape charges originally filed against defendant. In short, proof of the fact of defendant's prior conviction by introduction of exhibits 2 and 3 was a formality that was not subject to dispute or attention during trial.

By contrast, the evidence of defendant's willful disregard of the registration requirement was the focus of trial. Moreover, the evidence of defendant's conscious choice not to register in California was strong. As we have noted, defendant's statement to Sergeant Powers established he knew about the registration requirement because he had looked into whether he was required to register in California. Moreover, defendant's statement during a telephone call from prison showed he decided not to register at the request of his wife. With the strength of this evidence, the extraneous information that defendant had been charged with offenses for which he had not been convicted made no difference in the outcome of trial. Consequently, we reject the claim of constitutionally ineffective assistance of counsel.

10

# III

## Claimed Instructional Error in Defining "Reside" as Used by Section 290

Defendant contends the trial court had a duty to instruct the jury sua sponte that defendant had to "actually know that 250 Oro Madre Way constituted a 'residence' under section 290." We reject the claim of instructional error.

## A.

### CALCRIM No. 1170

As defendant acknowledges, the trial court instructed jurors on the requirements of section 290 with CALCRIM No. 1170. In pertinent part, the instruction informed jurors:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant was previously convicted of Arkansas Code Section 5-14-125, Second Degree Sexual Assault;

"2. The defendant resided in Sutter Creek, California;

"3. The defendant actually knew he had a duty under . . . section 290 to register as a sex offender living at 250 Oro Madre and that he had to register within five working days of arriving in October 2010;

"AND

"4. The defendant willfully failed to register as a sex offender with the police chief of that city within five working days of coming into that city.

"Someone commits an act willfully when he or she does it willingly or on purpose.

"Residence means one or more addresses where someone regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address. A residence may include, but is not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles.

"You must find beyond a reasonable doubt that a defendant actually knew of his duty to register multiple residences. (*P. v. Edgar* (2002) 104 C.A.4th 210.)

11

"Residence refers to a term so easily understood by a person of common intelligence as connoting more than just passing through or presence for a limited visit."

**B.**

*Sua Sponte Duty to Instruct the Jury*

Even in the absence of a request, trial courts must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and that are necessary for the jury's understanding of the case. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715, overruled on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 149.) The trial court's duty to instruct sua sponte includes the obligation to instruct the jury on a specific defense if there is substantial evidence supporting the defense, unless the defense is inconsistent with the defendant's theory of the case. (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

Relying again on *LeCorno*, *supra*, 109 Cal.App.4th 1058 and *Edgar*, *supra*, 104 Cal.App.4th 210, defendant argues CALCRIM No. 1170 was deficient for failure to instruct the jury that defendant had to understand the legal definition of "residence" before he could be convicted of section 290. Defendant's argument rests on a false assumption he could not violate the registration requirement unless he knew the house at which he was staying on Oro Madre Way met the legal definition of "residence" under section 290.

"Residence" as used by section 290 is not subject to an abstruse, technical, or complex meaning. As noted in *People v. McCleod* (1997) 55 Cal.App.4th 1205, "Neither the courts nor the Legislature has seen the need to further define the common term of residence for section 290. Nor do we." (*Id.* at p. 1212-1213.) Thus, the *McCleod* court rejected a claim the trial court had the duty to further define "residence" even when the jury requested a definition of that term. (*Ibid.*) Just as defendant's jury was entitled to employ the common meaning of "residence," so too defendant was required to use a

12

common and nontechnical meaning for "residence." Thus, the jury instruction sufficed when it stated the People had the burden of proving "defendant actually knew he had a duty . . . to register as a sex offender living at 250 Oro Madre." Having convicted defendant, the jury necessarily found he actually knew living in the house at that particular address triggered the registration requirement. The trial court did not need to add any language to CALCRIM No. 1170 regarding the knowledge requirement of section 290.

*LeCorno* and *Edgar* do not undermine the sufficiency of the instruction given in this case. In *Edgar*, the trial court gave instructions on section 290 that "were erroneous in that they failed to clearly state that a conviction required actual knowledge of the duty to register." (*Edgar*, *supra*, 104 Cal.App.4th at p. 219.) The *LeCorno* court noted it addressed jury instructions in a case "remarkably similar to *Edgar*." (*LeCorno*, *supra*, 109 Cal.App.4th at p. 1068.) The *LeCorno* court explained that "[n]ot only did the trial court refuse to instruct that the defendant must have known that he was required to register in San Mateo, but the supplemental instructions in response to the jury's questions told the jury explicitly, and incorrectly, that it was *not* necessary for the defendant to have believed that he had established a legal residence in San Mateo and was required to register there. It is nonsensical to say that in order to purposefully fail to register, the defendant must have knowledge only of an abstract duty to register, but he [or she] need not know what that means or how it applies to his [or her] circumstances." (*Ibid.*)

The instruction in this case does not suffer the same infirmity as in *Edgar* and *LeCorno*. Defendant's jury was informed defendant could be convicted only if he knew he had to register while residing at the house on Oro Madre Way. No additional instruction was required to describe the knowledge element of section 290.

13

## IV

### *Refusal to Instruct on Defense of Mistake of Fact*

Defendant contends the trial court erred in failing to instruct sua sponte on mistake of fact based on his claim that "substantial evidence supports [his] theory that he mistakenly believed he did not 'reside' in California." Defendant argues the trial court should have instructed the jury with CALCRIM No. 3406, which provides in pertinent part that a "defendant is not guilty of _<insert crime[s]> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) . . . did not know a fact or . . . mistakenly believed a fact." We reject the contention.

A trial court has no duty to instruct the jury on inapplicable defenses. (*People v. Jennings* (2010) 50 Cal.4th 616, 668.) Here, the trial court did not err in failing to give a mistake of fact instruction because defendant did not tender a valid mistake of fact defense. As we noted in part I, *ante*, defendant did not tender a defense based on his lack of awareness of his physical surroundings or passage of time at the house in Sutter Creek in which he was living. In other words, there is not a single *fact* about which defendant claimed he was mistaken. Instead, defendant attempted to excuse his failure to register based on a mistaken interpretation of *law* defining residence in section 290. Because defendant did not argue he was mistaken about any fact, the trial court was not obligated to instruct on the defense of mistake of fact. (*Jennings, supra,* 50 Cal.4th at p. 668.)

The trial court did not err by omitting a mistake of fact jury instruction. Consequently, defendant's trial counsel was not ineffective for failing to request an instruction on an inapplicable defense.

## V

### *Denial of Probation*

Defendant argues the trial court abused its discretion by denying him probation. Defendant points out he has no prior criminal record other than for the underlying sex

14

offense for which he was required to register and he scored in the "low risk category" for reoffending with another sex offense. We reject the argument.

## A.

### *Trial Court's Denial of Probation*

When sentencing defendant to prison, the trial court explained:

"In reading the probation report . . . , I noticed under [California Rules of Court, rule] 4.414[3], under criteria affecting probation [the California probation officer] talks about the defendant was an active participant. He was. That's under [rule] 4.414(6)(a). Facts relating to the defendant, his prior record. Indicates a pattern of regularly increasing serious conduct. Well, I think it's a fair argument that this is increasingly serious conduct because you have to take into consideration the fact that he was convicted in Arkansas of a second-degree sexual assault felony and given a 15-year grant of probation, which is very significant, with what [appears] to be supervised probation.

"[Defense counsel] is correct on behalf of his client that there's been no violation of probation. However, his conviction shows that he performed unsatisfactorily on probation by committing the offense because it's very clear what the probation order says, observe good conduct, obey all laws. Not leave the state without written permission. But [defense counsel] also ignores [rule] 4.414(b)(3), which is a two-edged sword that says willingness to comply with the terms of probation. He states he's willing, but on the other hand his conduct while in California shows that he's ignored the terms of his probation officer by going back to Arkansas several times. Yes, reporting in, but never telling his probation officer who testified. . . . [¶] . . . [¶]

---

**3**      Undesignated rule references are to the California Rules of Court.

15

". . . Never telling [Arkansas authorities] that he's left the state for substantial periods of time. I think the People are pretty accurate here. 14 months out of 17 months of residency here and going back for a short periods.

"Another factor of [rule] 4.414 [a]ffecting probation is the ability to comply with reasonable terms based on his age, education, health [and] other relevant factors. I think he may be able to comply with reasonable terms of probation. I think he's got the ability, but so far by his volitional conduct he's chosen not to. The likely effect of imprisonment on the defendant. That's probably the most significant factor effecting probation because obviously it would have a huge impact on his spouse.

"I don't see this as an aggravated case by any means, despite what probation's recommend[ing], despite the People's [contentions], but in some respects this is an unusual case. But what bothers me is this: [Defendant] made several statements to [the California probation officer] excusing his behavior, the behavior of not registering because, quote, he didn't know. Darn right he knew. He was told. He had an obligation. He had an obligation to register. He signed the probation order, which the Court has before it. The sex offender acknowledgment form from Logan County, Arkansas, which says, Number 9, you must remain within the State of Arkansas unless granted permission to leave by a supervising officer. You agree to waive extradition in the jurisdiction in or outside the U.S. and not contest any effort to return you to the State of Arkansas.

". . . [H]e's adjudicated guilty of an offense requiring registration of a sex offender and that if he fails to register or fails to report a change of residence, if he travels and/or moves across state lines, in this case that happened, back and forth between Arkansas and California, mostly in California, he could be charged with a federal crime.

"And even though the argument can be made that his intentions were good, he was very deceitful to the probation department in Arkansas by never getting permission to leave and never telling the probation department in Arkansas that he had left, and he had been gone for the best part of 17 months every time he came back. As I recall in this, I

16

think a statement was made that he did not do that because -- he did not tell anybody he was a registered sex offender because his wife didn't want him to; didn't want to cause trouble.

"And, secondly, that he apparently didn't see anything wrong with doing that. Well, there was something very wrong in doing that."

Concluding there were no circumstances in mitigation, the trial court denied probation and sentenced defendant to prison.

## B.

### *Trial Court Discretion Regarding Probation*

As this court has previously noted, "The granting of probation is not only an act of clemency, but also a bargain made with the probationer. 'The purpose and hope are, of course, that through this act of clemency, the probationer may become reinstated as a law-abiding member of society. . . . The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment.' " (*People v. Arata* (2007) 151 Cal.App.4th 778, 783, quoting *People v. Johnson* (1955) 134 Cal.App.2d 140, 143.)

Here, defendant was presumptively ineligible for probation due to his prior conviction of an offense that was the equivalent of section 288, subdivision (a). "[T]here is no prohibition upon using the same fact both to establish an element of the offense and to deny probation." (*People v. Nobleton* (1995) 38 Cal.App.4th 76, 82; accord *People v. Tillman* (1999) 73 Cal.App.4th 771, 776.) Section 1203, subdivision (e), prohibits a grant of probation to defendants who have been convicted of certain enumerated offenses "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation." One of these enumerated offenses is section 288, subdivision (a), or equivalent offense in another state. (§ 1203, subd. (e)(5).) Defendant committed an offense that was the equivalent of section 288, subdivision (a), and was

17

therefore presumptively ineligible for probation.  (§§ 288, subd. (a), 290, subd. (c); Ark. Code, § 5-14-125, subd. (a)(3)).)

When a defendant is presumptively ineligible for probation, the trial court must determine whether the presumption is overcome and the interests of justice would be served by a grant of probation.  (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 830 (*Du*).)  In deciding whether to grant or deny probation, the trial court enjoys broad discretion.  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  A decision denying probation will be reversed only on a showing of abuse of discretion.  (*Ibid.*)  To establish abuse, the defendant must show that, under the circumstances, the denial of probation was arbitrary or capricious.  (*Du*, *supra*, 5 Cal.App.4th at p. 831.)

## C.

### *The Trial Court did not Abuse its Discretion*

The trial court did not abuse its discretion in denying probation.  Rather than acting in an arbitrary and capricious manner, the trial court articulated careful consideration of the facts surrounding defendant's violation of section 290.  As the trial court observed, defendant had only recently been granted probation for the underlying sex offense when he flouted Arkansas requirements that he notify authorities when leaving the state.  Rather than disclose his travel to California, defendant traveled thousands of miles every six months to keep up the charade of living in Arkansas.  The evidence also showed defendant made a conscious choice not to comply with the registration requirement based on requests by his wife.  Moreover, defendant appeared to continue to deny any culpability for failure to register in California.  These factors amply support the trial court's conclusion defendant was not suitable for probation.

Defendant's reliance on tests showing he poses a low risk of reoffending with another sex offense does not undermine the conclusion his performance on probation demonstrated an unacceptable disregard for rules of which he had been repeatedly advised.  So too, defendant's minimal prior criminal record does not negate his lack of

18

forthcoming with California and Arkansas authorities at a time when he was required to promptly register at any new place of residence.  The trial court did not err in concluding defendant's situation was not an unusual circumstance compelling the grant of probation.

DISPOSITION

The judgment is affirmed.


      HOCH     , J.


We concur:


      RAYE     , P. J.


      BUTZ     , J.